1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

8
9

| | |
|---|---|
| WESLEY ERNEST BURTON, | Case No. 1:14-cv-583 GSA |
| Plaintiff, | ORDER REVERSING THE AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR PLAINTIFF |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

10
11
12
13
14
15
16
17

## I.    INTRODUCTION

Plaintiff Wesley Earnest Burton ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income under XVI of the Social Security Act.  The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Gary S. Austin.[1] The Court finds that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the record as a whole. Accordingly, this Court reverses the agency's determination to deny benefits and grants Plaintiff's appeal.

///

---

[1] The parties consented to the jurisdiction of the Magistrate Judge. (Docs. 6 and 7).

## II.   FACTS AND PRIOR PROCEEDINGS

On May 6, 2010, Plaintiff filed an application for Supplemental Security Income. AR 157-160.[2]  Plaintiff's applications were denied initially and on reconsideration. AR  90-102. Subsequently, ALJ Tamia Gordon held a hearing on April 2, 2012 (AR 28-69), and issued an order denying benefits on April 10, 2012. (AR 15-22).  The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Plaintiff's request for review. AR 1-3. This appeal followed.

### A.  Plaintiff's Testimony

The hearing was held in Fresno, California. AR 27.  Plaintiff appeared and testified.  AR 28-69.  Vocational Expert ("VE") Dr. Bonnie Drumwright also testified.  Plaintiff was represented by his attorney Robert Ishikawa. AR 27.

Wesley Burton was forty-two years old at the time of the hearing. AR 21.  He attended high school and completed four years of college. AR 31.  He suffers from lower back pain, right ankle post fusion, right shoulder pain from a previous dislocation, left hand numbness, as well as carpal tunnel release on the left side.  AR 31.

He previously worked as a restaurant cook and had also held a part-time job as a registration clerk at a local community college. AR 31, 50-52.  He stopped working on December 25, 2008, when his foot "gave out." AR 32.  He was unable to walk and used crutches until May 2009 when he underwent a fusion. AR 32. The surgery restored the degradation that occurred as of December, but did not fully restore the ankle. AR 32-33. Mr. Burton has difficulty standing, cannot run, and has very limited walking abilities.  AR 33-34.  He cannot tolerate standing for long periods because of the pain which he rates as a ten, on a scale from one to ten. AR 33; 43-44.  He wears a brace when

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

walking more than fifty steps.  AR 34.  However, this causes him pain in his left hip because he cannot put any weight on his right leg.  AR 34.

Wesley Burton had surgery on his left hand in November 2011. AR 35. His hand cramps and locks up.  AR 35-36.  He also has sensitivity to cold due to nerve damage. AR 35-36.  The surgery did not restore his functioning.  AR 36. Mr. Burton is right handed. AR 38.  He only uses his left hand to balance but not grasp. *Id.*

Additionally, Wesley Burton continues to experience back pain. AR 38-39.  He wakes up ten to fifteen times a night to shift his body while he sleeps.  AR 39.  He takes pain pills which puts him back to sleep, so he is able to get about eight hours of sleep over a twenty-four hour period, including naps during the day. AR 40.  He also experiences pain in his right shoulder after suffering several injuries while lifting weights.  AR 40-41.  He is afraid to use his shoulder to lift anything heavy.  However, he estimated that he could lift twenty pounds off the table about ten times, but not a third of the day. AR 42-43.

Given the above ailments, Plaintiff stated he can only stand for one hour a day, sit for two hours in an eight-hour day, and take about fifty steps before needing to sit down.  AR 43-44.  He must constantly trade-off between sitting and standing because of the pain. AR 45.  He also needs to lie down in a recliner for about three hours during an eight-hour period to relieve pressure on his spine. AR 45. He can no longer sleep in a bed due to the pain, and finds that the recliner is more comfortable for sleeping at night.  AR 46.  The medication he takes for pain makes him foggy and not as alert. AR 47.  With regard to daily activities, Plaintiff gardens in his backyard.  AR 48.  He cannot make it to the back yard two or three days a week because he is unable to get out of bed. AR 48.

///

///

**B.  Medical Record**

The entire medical record was reviewed by the Court.  AR 239-410.  However, only medical evidence that is relevant to the issues raised in this appeal will be summarized in the discussion below.

**III.      THE DISABILITY DETERMINATION PROCESS**

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. § 416.920(a). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. § 416.920 (a)(4).  The ALJ must consider objective medical evidence and opinion testimony.  20 C.F.R. § 416.913.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments;  (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work;  and

4

(5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 416.920(a)(4).

**A.  The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 15-22.  More particularly, the ALJ found that the Plaintiff had not engaged in any substantial gainful activity since May 6, 2010, the application date. AR 17.  Further, the ALJ identified right ankle arthosis, status post fusion in May 2009, discogenic and degenerative disc disease of the lumbar spine, and chronic left hand numbness with entrapment of the left ulnar nerve at the wrist, status post left guyon canal release and left carpal tunnel release on November 8, 2011 as severe impairments.[3] AR 17. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 18.

Based on her review of the entire record, the ALJ determined that Plaintiff retained the RFC to lift and carry twenty pounds occasionally and ten pounds frequently; sit, stand, and walk six hours each in an eight-hour workday; occasionally stoop, crouch, kneel, crawl and handle objects with the non-dominant left hand, "meaning gross manipulation." AR 18. Additionally, he would be unable to operate foot controls with the right leg, with no climbing ladders, ropes, or scaffolds. AR 18.  In making this determination, the ALJ found the Plaintiff's symptom testimony was not credible.  AR 18-20.

After considering the testimony of a vocational expert, the ALJ also determined that Plaintiff could not perform his prior job as a restaurant cook, however, the ALJ found that he had transferable skills to other occupations. AR 21.  Referencing the vocational expert's testimony and the Medical-Vocational Guidelines as a framework, the ALJ found that there were a significant number of jobs

---

[3] The ALJ also found that Plaintiff suffered from medically determinable non-severe impairments including left hip pain, right shoulder joint pain secondary to dislocation fifteen years prior, and reported side-effects from prescribed medications. AR 17.

that Plaintiff could perform, given his RFC, including an usher, a restaurant host, and an information clerk/greeter. AR 21-22.  As a result, Plaintiff was not disabled under the Social Security Act. AR 22.

## IV.   SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. See *Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id*.  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

In this appeal, Plaintiff argues that the ALJ: (1) did not properly evaluate the medical evidence, (2) failed to give clear and convincing reasons for rejecting the Plaintiff's testimony, and (3) improperly accepted the VE's testimony at step five.  (Docs. 14 & 17).  In opposition, Defendant argues that the ALJ's decision is supported by substantial evidence. (Doc. 17).

## V.   DISCUSSION

### A.  The ALJ's Evaluation of the Medical Evidence was Improper.

Both parties agree that the ALJ accurately summarized the facts of the medical record in the decision. (Doc. 14, pg. 5 and Doc. 17, pg. 3-4).   However, as noted above, the parties disagree

about whether the ALJ's interpretation of the medical record was correct.  A review of the record reveals that the ALJ improperly evaluated the medical evidence.

### 1.   Legal standard

The weight given to medical opinions depends in part on whether they are offered by treating, examining, or non-examining (reviewing) professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  *Lester*, 81 F.3d at 830. While a treating professional's opinion is generally accorded superior weight, if it is contradicted by an examining professional's opinion (when supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995), *citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152 (9th Cir. 2001), except that the ALJ need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.

The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an

examining physician. And like the opinion of a treating doctor, the opinion of an examining doctor,

even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that

are supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

1996).

The opinion of a non-examining physician may constitute substantial evidence when it is

"consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*,

278 F.3d 947, 957 (9th Cir. 2002). Such independent reasons may include laboratory test results or

contrary reports from examining physicians, and plaintiff's testimony when it conflicts with the

treating physician's opinion. *Lester*, 81 F.3d at 831, *citing Magallanes*, 881 F.2d at 751−55.

With regard to the assessment of the medical evidence, the ALJ stated as follows:

On December 14, 2011, Kent Yamaguchi, M.D., partially completed a medical source
statement. Therein, he opined that the claimant is able to occasionally push, pull, reach,
handle, and finger with the non-dominant left hand and his ability to feel with the fourth
and fifth digits of said hand has been partially lost. I give this opinion great weight, because
it is generally consistent with the evidence. For instance, the limitation to occasionally handling
with the non-dominant left hand is consistent with the left carpal tunnel release surgery, but
the limitation to occasional reaching, fingering, feeling, pushing, and pulling is inconsistent
with the full motor strength in the upper extremities. The opinion is further discounted because it
is only partially complete.
AR 19 (citation omitted).

The ALJ continued:

On October 24, 2010, Dr. Song performed an orthopedic consultation. She opined that the
claimant is able to lift and carry ten pounds occasionally and frequently, sit without restriction,
stand and walk two to four hours in an eight-hour workday and his exertional limitations
include climbing, stooping, kneeling, balancing, crouching, crawling, pushing, pulling, reaching,
fingering, and grasping. I afford great weight to this opinion, but only to the extent it is
consistent with the evidence. For instance, limitations in the ability to stoop, crouch, kneel and
crawl are consistent with the right ankle fusion surgery and degenerative changes of the lumbar
spine. On the other hand, the limitation to lifting and carrying ten pounds occasionally and
frequently is inconsistent with the claimant's testimony that he is able to lift ten to twenty pounds
occasionally. In addition, the limitation to standing and/or walking two to four hours total in an
eight-hour workday is inconsistent with the claimant's range of daily activity (discussed in detail
below).
AR 19.

///

The ALJ summarized the non-examining opinion evidence as follows:

At the initial determination level, S. Reddy, M.D., a state agency medical consultant, opined that the claimant is able to lift and carry ten pounds occasionally and frequently, sit six hours, stand and walk two hours in an eight-hour workday and occasionally balance, stoop, kneel, crouch, crawl and climb ramps or stairs. Dr. Reddy further opined that the claimant is capable of doing frequent but not constant handling, fingering, and feeling with the left upper extremity and he can occasionally reach overhead with the right upper extremity.  However, he is unable to frequently push, pull or operate foot controls with the right foot and he should never climb ladders, ropes, or scaffolds. In addition, he should avoid concentrated exposure to hazards (machinery, heights, etc.) and he must avoid frequently walking on uneven terrain.

Nasrabadi, M.D., another state agency medical consultant, affirmed this opinion at the reconsideration determination level.  I give this opinion significant weight, but only to the extent, it is consistent with the evidence. For instance, the prohibition from frequently pushing, pulling or operating foot controls with the lower right extremity is supported by the history of a right ankle injury, status post fusion surgery. In addition, the prohibition from climbing ladders, ropes or scaffolds adequately accounts for the degenerative changes of the lumbar spine and numbness in the left hand. However, similar to the opinion of Dr. Song (see above), the limitation to lifting and carrying ten pounds occasionally and frequently is inconsistent with the claimant's testimony that he is able to lift ten to twenty pounds occasionally. Furthermore, the limitation to standing and/or walking two hours total in an eight-hour workday is inconsistent with his range of daily activity (discussed in detail below).
AR 19-20.

As explained by the ALJ, Plaintiff was evaluated by treating, examining and non-examining physicians.  The ALJ rejected various aspects of each of the doctors' medical opinions primarily based on Plaintiff's testimony at the hearing that he could lift twenty pounds (AR 19-20, 42-43), as well as on his ability to engage in various activities of daily living.  AR 19-20; 48; 191-195.  With regard to Plaintiff's daily activities, the ALJ stated the following :

The claimant also engages in a range of daily activities inconsistent with the allegation of total disability.  For example, in an exertional activities questionnaire, he admitted to cooking for his family, watering the yard, and working on his car.  The claimant further reported that he vacuums, dusts, cleans the restroom, washes the bedding, does laundry, and drives an automatic car.  This range of daily activities is inconsistent with the allegation of total disability, and as a result, his credibility is diminished.  This range of activity is also inconsistent with testimony that he does not do much during the day other than gardening.  In addition, the claimant reported being able to lift up to 40 pounds, but later testified to only being capable of lifting 10-20 pounds.  These inconsistencies further diminish credibility.

AR 20 (citations omitted).

### 2. *Dr. Yamaguchi's Opinion*

The ALJ rejected Dr. Yamaguchi's limitation for reaching, fingering, pushing, and pulling in the left hand because Plaintiff demonstrated full motor strength in the upper extremities and because Dr. Yamaguchi's assessment form was not fully completed.  Plaintiff argues that the ALJ's rejection based on intact motor strength is improper because the medical record contains ample evidence of ulnar entrapment and neuropathy in the left arm. AR 368, 382, 385.  Plaintiff further contends that Dr. Yamaguchi did not rely on decreased strength as a basis for his opinions and therefore the ALJ's reliance on this evidence was improper.  (Doc. 14, pg. 13).

The Court finds the Plaintiff's arguments unpersuasive because there is no evidence that Dr. Yamaguchi did *not* rely on decreased motor strength as a basis for his opinion as Plaintiff asserts. Moreover, when rejecting Dr. Yamaguchi's opinion, the ALJ relied upon Dr. Song's findings that Plaintiff had full motor strength in the upper extremities after completing an orthopedic evaluation. AR 269.  This is a specific and legitimate basis to reject the limitations because the ALJ properly relied on contradicting medical evidence in the record when evaluating the physicians' opinions. *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence...."), quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Tomasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (upholding rejection of physician's opinion where "ultimate conclusions . . . did not mesh with her objective data or history"); *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 602 (9th Cir. 1999) (physician's finding of "marked limitations" legitimately rejected where "no substantial evidence existed demonstrating [plaintiff's] mental impairments prevented him from working"). AR 269.

Plaintiff also argues that Dr. Yamaguchi's incomplete questionnaire is not a specific and legitimate reason to discount the opinion, because the other assessment areas on the form exceeded the scope of the doctor's treatment. (Doc. 14, pg. 16). However, contrary to Plaintiff's representations, there are sections of this form regarding lifting and carrying that involve the use of Plaintiff's hands that Dr. Yamaguchi failed to complete. Rejection of the opinion on this basis is a specific and legitimate reason for rejecting the limitations because arguably, a partially completed form impacts the ALJ's ability to assess the credibility of the evaluator. *See, Bray v. Commissioner of Social Security,* 554 F. 3d 1219 (9th Cir. 2009)("[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") *citing Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir.2002); *Batson v. Comm'r of Soc. Sec.,* 359 F.3d 1190, 1195 (9th Cir. 2004) (the ALJ properly discounted two treating doctors' opinions because they were in the form of a checklist, and were contradicted by other statements and assessments of the claimant's medical condition). Therefore, the ALJ's rejection of the limitations imposed by Dr.Yamaguchi were proper and are supported by substantial evidence.

### 3. *The ALJ's Analysis of Dr. Song, Dr. Reddy, and Dr. Nasrabadi's Opinions*

Although the ALJ properly discounted Dr. Yamaguchi's opinion, a review of the record reveals that she did not properly evaluate the opinions of Dr. Song, Dr. Reddy or Dr. Nasrabadi, with regard to Plaintiff's lifting abilities, as well as his standing and walking limitations. In particular, all three of the doctors determined that Plaintiff could only lift and carry ten pounds occasionally and frequently. AR 270, 273, 283. Nevertheless, the ALJ rejected these opinions, and found that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, on the basis that at the hearing, the Plaintiff stated that he could lift twenty pounds. AR 19-20, 42-43. However, a close review of the testimony reveals that Plaintiff indicated that he could lift twenty pounds, ten times

repetitively, for up to two and a half hours - "*if he had to*." (emphasis added).  AR 42-43.  The Court

agrees with Plaintiff's counsel that what Mr. Burton can do "if he had to," and what all three doctors

have found to be medically advisable does not constitute a clear and convincing, or even a specific

and legitimate reason to reject all three medical opinions limiting Plaintiff to lifting ten pounds.

      The ALJ also rejected the all of the doctors' limitations regarding his ability to stand and

walk.  For example, Dr. Song found that Plaintiff could only *stand and walk two to four hours* in an

eight hour day. AR 270.  Similarly, Drs. Reddy and Dr. Nasrabadi determined that Plaintiff could

stand and/or walk *at least two hours* in an eight hour day. AR 273; 283.  They imposed this

limitation even when specifically presented with the option of limiting Plaintiff to standing and/or

walking six hours in an eight-hour day on the RFC assessment form.  *Id.*  Nevertheless, the ALJ

determined that Plaintiff could stand and walk *six hours* in an eight hour day on the basis that

Plaintiff performed daily activities including cooking, gardening, watering the yard, working on his

car, vacuuming, dusting, cleaning the restroom, washing bedding, and doing laundry.  AR 19-20; 47-

48; 191-195.

      The Court notes that an ALJ can consider activities of daily living when assessing credibility

to evaluate the alleged level of disability.  *Se*e, *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012)

("[e]ven where [the daily] activities suggest some difficulty functioning, they may be grounds for

discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating

impairment"); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (claimant's "ability to

perform various household chores such as cooking, laundry, washing dishes and shopping," among

other factors, bolstered "the ALJ's negative conclusions about [her] veracity").  However, as

previously noted, an examining doctor's opinion, even if contradicted by another doctor, can only be

rejected for specific and legitimate reasons that are supported by substantial evidence in the record.

*Lester*, 81 F.3d at 830.  In weighing the medical evidence, the ALJ should not use his or her own

medical judgment in lieu of that of a medical expert. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *Gonzalez Perez v. Secretary of Health & Human Ser*v., 812 F.2d 747, 749 (1st Cir. 1987); *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005) ("An ALJ may not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record.");  *Rohan v. Chater,* 98 F. 3d 966, 970 (7th Cir.1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." ). In other words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Threets v. Comm'r of Soc. Sec*., 2015 WL 1510720, at *6 (S.D. Ohio 2015).

Here, no medical professional, including three state agency physicians indicated that Plaintiff is able to stand and/or walk for six hours in an eight hour day as set forth in the ALJ's RFC. Moreover, a close examination of Plaintiff's testimony regarding daily activities reveals that although Plaintiff indicated he performs the tasks relied upon by the ALJ, he also identified significant limitations in doing so.  For example, Plaintiff testified that he gardens, but he only waters the grass, plants, and trees for approximately an hour a day, and he hires gardeners to do the mowing and the edging. AR 191-192.  Additionally, he shops, but only goes to the store for a few items, otherwise he asks someone to go for him.  AR 192.  Objectively speaking, none of these activities, or any of the other activities the ALJ identified such as vacuuming, doing laundry, or cleaning the bathroom requires standing and/or walking for a six hour period.  Therefore, the ALJ's assessment that Plaintiff is able to stand and walk six hours in an eight-hour work day is not supported by substantial evidence, as the medical opinions indicate that Plaintiff is limited to, at a maximum, standing and walking for two to four hours in an eight hour day. AR 270, 273, 283. Therefore, the case will be remanded for a re-evaluation of the medical evidence so the ALJ can

incorporate these additional limitations into a hypothetical posed to a VE to determine whether there are jobs that Plaintiff can still perform.

Because this case is remanded for renewed consideration of the medical record, the Court will not address Plaintiff's other arguments regarding the ALJ's assessment of Plaintiff's credibility, or the ALJ's analysis of Plaintiff's ability to perform jobs identified at step five of the analysis, since both issues are inescapably linked to the ALJ's conclusions regarding medical conditions and related limitations.

## VI. REMAND FOR FURTHER ADMINSTRATIVE PROCEEDINGS

Given the above, the Court must determine whether this action should be remanded to the Commissioner with instructions to immediately award benefits, or whether this action should be remanded for further administrative proceedings.  Remand for further proceedings is appropriate when an evaluation of the record as a whole creates serious doubt as to whether the claimant is in fact disabled. *Garrison v. Colvin*, 759 F. 3d 995, 1021 (9th Cir. 2014).  Conversely, a court should remand with for an award of benefits when: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id*. at 1020. Even if all three of these criteria are met, the Court can retain flexibility in determining an appropriate remedy. *Brown-Hunter v. Colvin*, 2015 WL 4620123 *8 (9th Cir. Aug. 4, 2015).

Here, remanding for an award of benefits is not appropriate.  The ALJ did not properly evaluate the medical record which requires additional analysis.  As noted above, the current medical record indicates that Plaintiff is only capable of lifting ten pounds, and for standing and/or walking two to four hours in an eight hour day.[4]  AR 270, 273, 283. However, the ALJ may order additional tests or

---

[4] This limitations are in addition to those identified by the ALJ in the RFC, i.e., sitting for six hours in an eight hour day, occasionally stooping, crouching, kneeling, crawling, and handling objects with the non-dominant left-hand, meaning

14

evaluations to further assess the Plaintiff's medical conditions if she deems it necessary. Moreover, the hypotheticals presented to the VE incorporated either the ALJ's RFC, or an RFC that included Dr. Yamaguchi's restrictions which the Court has concluded were properly rejected by the ALJ. AR 56-60; 66-67. There is no VE testimony that fully addresses the limitations discussed in this order. Upon completion of an assessment of the medical record, the ALJ shall formulate a RFC that incorporates any identified limitations, and present those limitations in hypotheticals to the VE if needed.

## VII.    CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is not based on proper legal standards. Accordingly, this Court GRANTS Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. This action is REMANDED to the Commissioner for further administrative proceedings consistent with the instructions outlined above. The Clerk of this Court shall enter judgment in favor of Plaintiff, Wesley Earnest Burton, and against Carolyn W. Colvin, Commissioner of Social Security. The Clerk of the Court is directed to close this action.


IT IS SO ORDERED.

Dated:   __September 15, 2015__               _____/s/ Gary S. Austin_____
                                                                        UNITED STATES MAGISTRATE JUDGE

---

gross manipulation; and an inability to climb ladders, ropes or scaffolds, or operate foot controls with the right leg. AR 18-20.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28